(C. D. 469)

EDWARD & JOHN BURKE, LTD. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided April 18, 1941)

*Benjamin A. Levett (Meyer Ohlbaum* of counsel) for the plaintiff.
*Charles D. Lawrence,* Acting Assistant Attorney General (*Charles J. Miville*
and *James F. Donnelly,* special attorneys), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges; KEEFE, J., not participating

EVANS, Judge: This is an action against the United States in which
the plaintiff seeks to recover money claimed to have been illegally
collected and paid as customs duties upon an importation of mer-
chandise from France, described on the invoice as "liqueurs" and on
the entry as "Amer Picon liqueur." Duty was assessed thereon at
the rate of $5 per gallon under paragraph 802 of the Tariff Act of
1930 as bitters. The case has been submitted upon the official papers
as forwarded to the court by the collector of customs, including a
letter to the Assistant Attorney General in Charge of Customs from
the collector, insofar as such letter states facts.

From these documents it appears that the merchandise was entered
for warehouse on March 14, 1936. Liquidation was had on June 9,
1937, upon the basis of the assessment of duty at $2.50 per gallon,
apparently as a liqueur under paragraph 802, *supra,* as modified by
the French Trade Agreement of June 15, 1936, T. D. 48316. Said
trade agreement was made applicable to merchandise in warehouse on
or after June 15, 1936. The official papers show that this merchandise
was withdrawn on June 15, 1936. Duty was also assessed upon the
bottles containing the Amer Picon but that is not in issue here. On
August 5, 1937, within 60 days after the original liquidation, the
collector reliquidated the entry, assessing duty at $5 per gallon under
paragraph 802, *supra,* instead of the rate provided for in the trade
agreement.

It is against this reliquidation that protest is directed. Plaintiff
claims that it is illegal, null, and void because it was made more than
1 year after entry and more than 1 year after payment of duty.
(It was, however, made within 60 days after liquidation.) The
ground for this claim is the construction placed upon section 514 of

the Tariff Act of 1930 by the plaintiff. Said section, insofar as pertinent, is as follows:

SEC. 514. PROTEST AGAINST COLLECTOR'S DECISIONS.

\* \* \* all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeabls, \* \* \* and his liquidation or reliquidation of any entry, \* \* \* shall, upon the expiration of sixty days after the date of such liquidation, reliquidation, decision or refusal, be final and conclusive upon all persons (*including the United States and any officer thereof*), unless the importer, consignee, or agent of the person paying such charge or exaction, \* \* \* shall, within sixty days after, but not before such liquidation, reliquidation, \* \* . \* file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry, \* \* \* the reasons for the objection thereto, \* \* \* [Italics supplied.]

The italicized language quoted above "including the United States and any officer thereof," appears for the first time in the Tariff Act of 1930. Plaintiff contends that the purpose of Congress in inserting this new language was to make the collector's liquidation final after 60 days in the absence of protest by the importer as well against the United States as against all persons, except as provided in section 521 of the same law wherein the collector is authorized to reliquidate an entry within 2 years after the date of liquidation or last reliquidation if he find probable cause to believe there is fraud. The question of fraud is not involved here, therefore section 521 is not applicable.

The Government, in a very able brief, contends that while said section 514 prescribes a time limitation of 60 days after which a liquidation becomes final and conclusive on both the importer and the Government, that section carries an implicit right of the collector to reliquidate an entry and grants an explicit right to the importer to protest a decision prior to the running of the statutory limitation. In support of their position the brief for the Government quotes the well-known axiom of statutory construction that statutes "will be construed in the most beneficial way which their language will permit to prevent absurdity, hardship or injustice; to favor public convenience, and to oppose all prejudice to public interests." Lewis' Sutherland Statutory Construction, vol. II, sec. 490, p. 913. However the brief fails to point out in what way the interpretation claimed by the plaintiff for this particular statute violates or runs counter to that axiom.

Further in support of their contention the Government brief points to the legislative history of the provision in question. The Report of the Committee on Ways and Means to the Committee of the Whole House, while the bill which later became the Tariff Act of 1930 was under consideration, at p. 179 contains a passage which defendant claims amply supports the Government contention. We quote the language of that report as follows:

Section 514 of the 1922 Act, relating to protest against collectors' decisions, provides that such decisions shall be final unless the importer, within 60 days, files a protest in writing with the collector, and, if the merchandise is entered for consumption, pays the full amount of duties, charges, and exactions ascertained to be due. Section 515 provides that upon the filing of a protest and payment of duties and other charges the collector shall within 60 days review his decision; and, if the collector upon such review affirms his decision or if a protest is filed against his modification of the decision he shall transmit the papers and exhibits to the United States Customs Court for determination. Section 521 then provides that the entry and passage free of duty and the settlement of duties shall, in the absence of fraud and in the absence of protest, be final and conclusive after the expiration of one year from the date of entry, or after the expiration of 60 days after liquidation when liquidation is more than 10 months after the date of entry.

The Court of Customs Appeals has held that while section 21 of the Act of June 22, 1874 (now sec. 521 of the 1922 Act) was a statute of limitations, the collector might reliquidate an entry downward even though the importer had not protected his legal rights by protest. It is obvious that this holding, if applicable to section 521 of the 1922 Act, in great measure nullifies the time limitation in section 514 within which the importer must file a protest. Under the practice now prevailing, the department is authorizing refund where an entry has been reliquidated downward within a year from the date of entry in the absence of protest; but a rule was adopted that in the absence of fraud and where the customs officer had a full opportunity to reach a decision as to the correct rate of duty the entry should not be reliquidated for the purpose of collecting increased duty after the merchandise had been withdrawn from customs custody. This seemed only fair to the importer who might have sold his merchandise relying upon the collector's decision.

Your committee believes that it would be in the interest of better administration and the facilitation of the final disposition of importations if in the absence of protest or fraud final action be limited to 60 days for both the importer and the Government. Accordingly, section 514 has been amended so as to make it clear that the decision of the collector shall be final upon all persons, including the Government, after 60 days after final liquidation. This will require the repeal of section 521 except as to cases in which the collector finds probable cause to believe there is fraud, in which cases his authority to reliquidate within two years after the date of liquidation or last reliquidation is continued.

We are frank to admit that a careful reading of the statute in question as amended in the act of 1930 does not appear to carry out the intention of the legislative body as set forth above, but is in line with the contention of the plaintiff. However, it is the duty of the court to so interpret statutes as to carry out the intent of Congress if possible. This is so even though the wording of the statute is at variance with the legislative intent. In the case of *United States et al.* v. *American Trucking Associations, Inc., et al.*, 310 U. S. 534, the court used language that we think applicable to the instant case. The case cited involved the jurisdiction of the Interstate Commerce Commission over the question of the qualifications and maximum hours of service for all employees of contract and motor carriers subject to the Motor Carrier Act. The decision of the Supreme Court turned upon the

interpretation to be placed upon the term "employee" as used in said act. We quote the language of the court as follows:

In the interpretation of statutes, the function of the courts is easily stated. It is to construe the language so as to give effect to the intent of Congress. There is no invariable rule for the discovery of that intention. To take a few words from their context and with them thus isolated to attempt to determine their meaning, certainly would not contribute greatly to the discovery of the purpose of the draftsmen of a statute, particularly in a law drawn to meet many needs of a major occupation.

There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one "plainly at variance with the policy of the legislation as a whole" this Court has followed that purpose, rather than the literal words. When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no "rule of law" which forbids its use, however clear the words may appear on "superficial examination." The interpretation of the meaning of statutes, as applied to justiciable controversies, is exclusively a judicial function. This duty requires one body of public servants, the judges, to construe the meaning of what another body, the legislators, has said. Obviously there is danger that the courts' conclusion as to legislative purpose will be unconsciously influenced by the judges' own views or by factors not considered by the enacting body. A lively appreciation of the danger is the best assurance of escape from its threat but hardly justifies an acceptance of a literal interpretation dogma which withholds from the courts available information for reaching a correct conclusion. Emphasis should be laid, too, upon the necessity for appraisal of the purposes as a whole of Congress in analyzing the meaning of clauses or sections of general acts. A few words of general connotation appearing in the text of statutes should not be given a wide meaning, contrary to a settled policy, "excepting as a different purpose is plainly shown."

The court there held that in view of the legislative history of the act together with other circumstances set out in its decision, the word "employee" as used in the act there under consideration was limited to those employees whose activities affect the safety of operation.

So in interpreting the provision of the tariff act now before us, we think that in view of the legislative intent as above set forth, i. e., to allow both the importer and the Government (the collector) 60 days within which to act, that meaning should be given to it which will best carry out that intent. We so interpret it and hold that the collector acted within the law in reliquidating the entry involved.

Inasmuch as plaintiff has produced no evidence on the merits of the claim that the merchandise is properly dutiable at $2.50 per gallon under said paragraph 802, that claim is also overruled.

Judgment will be rendered accordingly. It is so ordered.